958 F.2d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Marion F. MILLER, Jr., Plaintiff-Appellant,
v.
George F. DENTON, et al., Defendants-Appellees.
 Nos. 91-15300, 91-15382.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 13, 1992.*
Decided March 17, 1992.
 
 Before BROWNING, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In this consolidated appeal, Marion F. Miller, Jr., a California state prisoner, appeals pro se the district court's grant of summary judgment in favor of the appellees in Miller's 42 U.S.C. § 1983 action. We review de novo, Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir.1986), and we affirm.
 
 Transfer to Restrictive Housing Unit
 
 3
 Miller contends that he was denied due process when prison officials transferred him to a restrictive housing unit (RHU) during an emergency prison lockdown without notice and a hearing. This contention lacks merit.
 
 
 4
 "It is axiomatic that due process is flexible and calls for such procedural protections as the particular situation demands." Toussaint v. McCarthy, 801 F.2d 1080, 1098 (9th Cir.1986) (quotations omitted), cert. denied, 481 U.S. 1069 (1987). Generally, when a prisoner is placed in administrative segregation, and that prisoner has a liberty interest in being free from administrative segregation, due process requires that prison officials hold an informal hearing within a reasonable time after the prisoner is segregated. Id. at 1100. Prison officials must inform the prisoner of their reasons for segregating him and allow the prisoner to present his views. Id.; see also Hewitt v. Helms, 459 U.S. 460, 476 (1983) (ordinarily a written statement by the inmate will accomplish the purpose of allowing a prisoner an opportunity to present his views). In contrast, during a prisonwide emergency lockdown, a California prisoner has no protected liberty interest, and therefore has no due process right to notice or a hearing. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir.1980), cert. denied, 451 U.S. 937 (1981).
 
 
 5
 Here, on September 23, 1983, prison officials transferred Miller to RHU in accordance with the prison warden's "policy of emergency lock downs." On October 4, 1983, a classification hearing was held, and Miller voiced his objection to the transfer. Nevertheless, the district court found that "[t]he hearing served to remove [Miller] from his work assignment, and not to review his placement in RHU." On September 27, 1983, Miller also filed an administrative complaint challenging his placement in RHU. On October 5, 1983, a prison official responded to this complaint and stated that Miller was being held in RHU because he had been seen associating with known gang members who had been involved in violent attacks on other inmates. In November 1983, Miller was returned to the general prison population.
 
 
 6
 The district court did not err by granting the defendants' motion for summary judgment. First, it is not clear that Miller had a constitutionally protected liberty interest in freedom from placement in RHU during an emergency prison lockdown. Compare Toussaint, 801 F.2d at 1098 (California "has created a liberty interest in freedom from administrative segregation") with Hayward, 629 F.2d at 603 (a prisoner does not have a due process right to a hearing where prison officials implement an emergency lockdown). See also Cal.Code Regs. tit. 15, § 3383(a) (1992) (warden has discretion to confine inmates to their quarters or to impose a lockdown to control a widespread institutional disturbance). Nevertheless, we need not decide whether Miller had a protected liberty interest because even if he did, he received all the process he was due. Given the emergency that existed at the prison, Miller received sufficient notice of the charges against him and an opportunity to be heard through his administrative appeal. See Hewitt, 459 U.S. at 476; Toussaint, 801 F.2d at 1098. Accordingly, Miller's transfer to RHU did not constitute a denial of his due process rights. See id. Moreover, Miller's claim that prison officials did not have adequate evidence to substantiate their allegations of gang membership lacks merit. See Toussaint, 801 F.2d at 1105 ("the exigencies of prison administration allow prison administrators to make segregation decisions on the basis of 'some evidence,' including the administrator's experience and awareness of general prison conditions").
 
 Eighth Amendment Claims
 A. Prison Cell and Outdoor Exercise
 
 7
 Miller contends that prison officials violated his eighth amendment rights because they placed him in an inadequately-sized prison cell with another inmate and restricted his access to outdoor exercise. These contentions lack merit.
 
 
 8
 Although prison officials may not deprive prisoners of the basic necessities protected by the eighth amendment, "when a genuine emergency exists, prison officials may be more restrictive than they otherwise may be, and certain services may be suspended temporarily." Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir.1982) (citation omitted). "[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt, 459 U.S. at 468. Prison officials may temporarily limit a prisoner's outdoor activities during an emergency. Hayward, 629 F.2d at 603.
 
 
 9
 Here, prison officials placed Miller in RHU pursuant to the warden's "policy of emergency lock downs." In his deposition testimony, Miller stated that he was allowed to exercise in the yard approximately every other day. Given the genuine emergency that existed, Miller received adequate outdoor exercise while he was confined to RHU. Accordingly, prison officials did not violate Miller's eighth amendment rights. See Hewitt, 459 U.S. at 468; Hoptowit, 682 F.2d at 1259; Hayward, 629 F.2d at 603.
 
 B. Infrequent Warm Meals
 
 10
 Miller contends that prison officials violated his eighth amendment rights because they gave him infrequent warm meals that were served in unsanitary facilities. This contention lacks merit.
 
 
 11
 To state a section 1983 claim based on a violation of his eighth amendment right to adequate food, Miller must show that the prison officials acted with deliberate indifference. Wilson v. Seiter, 111 S.Ct. 2321, 2326 (1991). Prison officials are deliberately indifferent if they manifest unnecessary and wanton disregard for the allegedly unconstitutional prison conditions. Id. at 2326-27.
 
 
 12
 Here, Miller stated in his deposition that (1) his meals in RHU varied from hot meals to sack lunches; and (2) the meals were brought up from the prison's culinary department and distributed to him from a serving area. The evidence presented by Miller fails to show that prison officials exhibited unnecessary or wanton disregard for the conditions under which they served prison meals. Accordingly, prison officials did not violate Miller's eighth amendment right to adequate food. See id.[1]
 
 C. Medical Care
 
 13
 Miller contends that prison officials violated his eighth amendment rights because they denied him medical care while he was confined to RHU. This contention lacks merit.
 
 
 14
 To state a section 1983 claim based on a violation of his eighth amendment right to adequate medical care, Miller must show that the prison officials acted with deliberate indifference to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to serious medical needs means the "unnecessary and wanton infliction of pain." Id. at 104. Moreover, the indifference to the prisoner's medical needs must be substantial. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980).
 
 
 15
 Miller's complaint alleged that he received inadequate medical care while he was in RHU.[2] The affidavit of the warden stated that prisoners in a lockdown received medical care from doctors and medical technicians who patrolled the tiers, and that any prisoner experiencing a medical problem was sent to a clinic for treatment. Miller's allegations fail to show how prison officials were deliberately indifferent to his serious medical needs. Accordingly, prison officials did not violate Miller's eighth amendment right to adequate medical care. See Estelle, 429 U.S. at 104, 106; Broughton, 622 F.2d at 460.
 
 D. Library Access
 
 16
 Miller contends that prison officials violated his eighth amendment rights because they denied him regular access to the prison law library. This contention lacks merit.
 
 
 17
 "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). There is no constitutional guarantee, however, to unlimited access to a law library. Johnson v. Moore, 948 F.2d 517, 521 (9th Cir.1991). A prisoner can prove that he or she was denied access to the courts by showing that (1) the omission of law books was substantial; (2) equivalent information was not available through alternative sources; or (3) the omissions in some way obstructed the prisoner's access to the courts. See id. (footnote omitted).
 
 
 18
 Here, law library personnel patrolled the tiers in RHU to assist those prisoners with legal problems and to give additional assistance to those prisoners who had court-imposed deadlines. Therefore, although he did not have physical access to the library while he was in RHU, Miller was able to get legal information from an alternative source. Moreover, Miller did not have to meet any court-imposed deadlines while he was confined to RHU. Accordingly, in light of the genuine emergency that existed, prison officials did not violate Miller's right of access to the courts. See Bounds, 430 U.S. at 828; Johnson, 948 F.2d at 521; Hoptowit, 682 F.2d at 1259.
 
 Conclusion
 
 19
 We affirm the district court's grant of summary judgment in favor of the appellees.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his complaint, Miller also alleged that the food-serving area and the serving trays were unsanitary. In his memorandum opposing the summary judgment motion, Miller further stated that he suffered from diarrhea and stomach problems due to those conditions. These allegations are insufficient to withstand a motion for summary judgment
 
 
 [2]
 In his opposition to the summary judgment motion, Miller further claimed that prison officials ignored his numerous requests for medical assistance to treat stomach ailments